Good morning, Your Honors. David Gallo, Del Mar, California. Counsel, hold on just a second here. Go right ahead. Good morning, Your Honors. David Gallo, Del Mar, California. On behalf of Appellant Sadlowski, if it please the Court, we'd like to reserve four minutes for rebuttal. I will do my best to help you. Counsel, I'm having a little hard time hearing you. If you could speak up, that would help me. Yes, Your Honor. Because the Constitution guarantees a right to trial by jury, it is our position that the parameters of Rule 56 are delimited by the Constitution itself. The jurisprudence of Rule 56 is and should be inflexible. The rules are familiar. There must be no genuine issues of material fact. Evidence must be viewed in a light most favorable to the nonmoving party. Whereas here, summary judgment is based upon an affirmative defense, it is the movant's burden to establish conclusively all elements of that defense. And most importantly, inferences regarding knowledge, intent, or state of mind must be resolved in favor of the nonmovent. Here, the affirmative defense— Counsel, can I sort of cut to the chase here? The argument is that she didn't know at the time that she had this pending claim. Isn't that right? At the time the schedule was filed. Of course she didn't. First of all, the schedule of assets in the Statement of Financial Affairs were filed a year before she even went to work for Michaels. Right. And it's a case for unpaid overtime. After she got the Michaels job—or excuse me, after she became a Michaels store manager, which is a relevant date because she was paid overtime until she became a store manager. After she became a store manager, she filed an amended schedule of current income, which was completely accurate. That was filed so close after the time she became a store manager that it's not even clear that she was owed any— Your position is that she didn't know until September 2011 when she engaged counsel to bring a claim against Michaels that she actually had a claim, right? It is my position that that is the actual fact, and it is my position that under Rule 56 it must be presumed. I think that's a reasonable argument. So let me go on then, if I could, because I think that's uncontested, that the record that we have indicates she engaged counsel in September of 2011 and within a week she filed suit, very, very promptly. Okay. Then what happened, I think, next is that she withdrew her opposition to the motion to dismiss. Sure. Wait a minute. I hadn't gotten to the question yet. If I could, please. If she hadn't allowed that claim to be dismissed, she would have had to disclose in bankruptcy, right? I don't think so. In other words, if the bankruptcy kept going on and she opposed the trustee's motion to dismiss, she would have had to disclose at that point that she had a claim against Michaels, right? I do not know the answer to that question. How can you not know? How can you not know that? How can we— Okay, because— Absolutely she had an obligation to disclose that. She had filed suit by then. Filed a lawsuit. Right. But during the course of the pendency of a bankruptcy estate, people are going to acquire property of various kinds. And they're going to amend those schedules. Every time. Right. So why are you hesitating? This was the easy question. Because I don't know what the authority for that is, but let me say this. Intent is an essential element for judicial estoppel. How can you presume that she would have known that if the bankruptcy went on and if things were requested of the bankruptcy court, that she would have had to— Nothing has to be requested of the bankruptcy court. We've got, as I said, and I'm not trying to be flip, but this was the easy part. If the bankruptcy had continued, she's already filed suit at this point, alleging that she's got a claim that may one day be liquidated. Sure. She's got an obligation to disclose that under our case law, right? I don't know the answer to that, but I will say this. There are elements to judicial estoppel. There's four of them. One of them is judicial acceptance by the bankruptcy court. If the bankruptcy court never entered— We're not talking about the elements here. We're talking about a separate duty under the bankruptcy code to ensure that the schedule of your assets and liabilities are true and correct at all material times during the pendency of the bankruptcy petition. You're not answering Judge Kristen's question. Well— I mean, the answer is yes, she had a duty to disclose. You may not want to say that, but you and I both know that that's what the answer is. Well, I have two things to say to that. Firstly, you say all material times, no further orders were requested of the bankruptcy court. It doesn't matter. It's an affirmative obligation on behalf of the debtor to keep the court and the creditors apprised. She had filed two petitions asking, in essence, for an amendment to her bankruptcy plan because she wasn't able to make the payments. Yes, Your Honor. It is certainly material and relevant to the court's consideration as to whether that claim, that request is meritorious to find out what are your current assets. Are you, in fact, able to make these payments, or is this more than you can handle right now? Those weren't current assets. It's a disputed— This is not the point you should be fighting here. You should just be saying, of course she had a duty to disclose it once she filed a lawsuit for crying out loud, and you should be getting to what the hard question is so that you can at least find out what it is so you can try to answer it. I'm willing to give you that she didn't have notice of this claim. I think it's entirely reasonable the layperson wouldn't know she had notice of claim until she consulted a lawyer in September of 2011. I think that is entirely reasonable. And then she filed suit. There is no question, counsel. You're just going to have to go with me on this, or you're going to really lose credibility on my scorecard. So you'll just let me finish, please. Then she filed suit against Michaels. She's on notice. And she has an obligation under our case law. No question. If you really could just get to my question, it would help me so much. Then she's got an obligation. If the bankruptcy claim had continued, the petition had continued, she would have had an obligation to disclose that. That's my view of the law, if you could just accept that. So why don't we have a problem with her gaining an advantage by allowing the bankruptcy claim to be dismissed? Well, under 11 U.S.C. section 1307 subpart B, a debtor under Chapter 13 has a right to dismiss a claim instantly at any time by filing a notice of dismissal. So that's an absolute right under the bankruptcy code. She wasn't requesting a discharge. She allowed it to be dismissed. She had opposed the dismissal earlier. Yes, Your Honor. Okay. And I appreciate you getting to the answer to my question. Your answer, as I take it, is that she could have allowed this to be dismissed at any old time. 1307 subpart B, absolute right to dismiss at any time. Okay. So here's the deal. Because New Hampshire does have several elements, as you've alluded to, and one of them is there has to be some indication that she gained an unfair advantage, and that's what I'm trying to get you to focus on. And acceptance by the court and intent. And her testimony was she didn't even know if the bankruptcy case was open because her husband handles that. Okay, don't even try that one. Innocent spouse defense. Don't even try that one because it's not helpful to me, please. So what she's done is she's pursuing a claim, and it may be a very meritorious claim. I don't know that, sir. But if it is, I've got two competing concerns, and I'm going to ask opposing counsel to address that and then I'm going to give up and just listen to what you both have to say. But my concern is that on the one hand, if that claim is the civil claim is meritorious and it does not go forward, there's a competing concern here, which is that the asset, the potential asset is not realized to, so they're not available to pay her creditors in bankruptcy or otherwise. Do you want to speak to that? Well, Your Honor, again, the bankruptcy code says that any debtor at any time can dismiss without court approval, 1307B. So if someone drops the bankruptcy, they have a right to do that at any time. In this particular case, there's nothing to stop her creditors from pursuing that claim if it's ever liquidated to money. Except that they don't know about it. Well, they do, actually, because they all got a service copy of her notice to reopen. Do we have that? Do you want to talk about that? That would be helpful for me to understand what those equities are vis-à-vis the creditors who are owed money. Any creditors owed money, they know she's out of bankruptcy. They can pursue any assets she has at any time. Yes, that's why it's important to amend those schedules. Do we have anything in our record to indicate that the folks who were her creditors, and I understand the mortgage was foreclosed, so that's different. But whatever those remaining claims are, I don't know who they are. I don't know whether they had notice. Could you speak to that, please? We request your judicial notice of the fact that we sought to reopen and the notice of motion was served on all creditors. Did the motion say why you wanted to reopen? The motion to the Bankruptcy Court, it certainly did. So they received notice that, hey, I've got a claim against my former employer? Yes, Your Honor. Thank you. Yes, Your Honor. Can I go back to your point about dismissal? I think I heard you say, I want to make sure I got it right, that a debtor is allowed to dismiss a bankruptcy case without court approval. Instantly, at any time. So it's like a voluntary dismissal of a civil suit, basically. Absolutely. You don't have to get an order from a court. 1307, subdivision B. Yes, Your Honor. And it's so a debtor can drop a bankruptcy at any time. And there's no requirement to issue any sort of report or to explain why. To explain why. Exactly. So if I can, there's one quote I have from this Court's decision in Jakula describing the holding in Ocwin, and I quote, Ocwin remanded for further factual development because, viewing the evidence in the light most favorable to the plaintiff debtor, a reasonable fact finder could conclude that the omission was inadvertent, end quote. What that says is if there's any possibility that a finder of fact could conclude that there's no wrongful intent. I know. We know that. So could you they're going to get up and talk about the fact that at her deposition she was put on notice very expressly because they asked the question, did you amend? Sure. So could you give us your response to that, please? Sure. If they had done what the rules of civil procedure required, when they filed their amended answer after that, if they'd pleaded judicial estoppel, I would have been on notice and I would have looked at this and I would have learned something I never knew. I know. They didn't plead the affirmative defense and the trial court even called it sandbagging. Yes, Your Honor. We've read everything. But what about, and they should have, and that's why the trial court accused them of sandbagging, and I appreciate all of that. But then we get to the deposition. So then what happens? What's your response to that notice? Sure. So I learned of the bankruptcy immediately before the deposition when Michaels asked in interrogatories, have you ever been bankrupt? Having been a Chapter 7 bankruptcy lawyer many years ago myself, many years ago, I had a clear understanding that post-petition wages were not property of the estate. Two years later, briefing this appeal, I learned that Chapter 13, which is a very unusual type of bankruptcy, has a different rule. That's why I wasn't put on notice. If they had pleaded it as an affirmative defense, I would have known to look at it at that time and I would have addressed it with the bankruptcy court at that time. Okay. That's the answer. And then when we ultimately did try to reopen, Michaels goes and convinces the bankruptcy court because it was dismissed for failure to make plan payments, you can't even reopen it. Is there a time limit on how long it takes for somebody to, the time limit after a dismissal for reopening? I believe there's a one-year time limit. And at the time of the deposition, had the one year already gone by? That's a tough question. Let me answer. Okay. So immediately after she files this action, it's true, her bankruptcy lawyer withdraws the opposition and allows it to be dismissed. Right. There's this delay in getting the written order out. Yeah. So let's just talk about the bankruptcy court's oral decision. If the bankruptcy court's oral decision for dismissal is the relevant date, had more than one year gone by before she had her deposition taken in the civil case? In other words, between the oral dismissal and the deposition? I think the answer to that question is no. Okay. And what I would take from that is, again, I was of the understanding that post-petition wages are not a state property and the bankruptcy was irrelevant. But aside from that, if they'd done what they're supposed to do, pleaded as an affirmative defense, then I would have had notice within that one year and I could have looked at it at the time. So we were sandbagged. Is there any explanation in the record we have about why it took a year to dismiss that? Well, the dismissal was entered on the docket in October of 2011. I just am assuming the courts are very busy and it's a computer issue. The bankruptcy case had actually been dormant for a long time before even the withdrawal of the request for dismissal was filed. Thank you. I'm going to save the balance of your time. And, yes, thank you, Your Honors. Thank you, and may it please the Court, Jesse Cripps on behalf of Michael Storrs. Your Honors identified a few issues I'd like to touch upon, several of them. The first in terms of whether or not Ms. Sidlowski had knowledge of the claim and this notion that she may not have had knowledge of the claim. The standard, it's important to remember, is not whether she knew the law regarding her claim. The standard is whether or not she had facts that would ñ knew of facts that would potentially give rise to a claim. But you're dealing with a summary judgment motion on here on an affirmative defense on which you have the burden of proof. And so what's the basis on which a district judge could properly say that no reasonable fact finder, which would probably be the judge on this, could find that she wasn't on notice? You basically had all she was is she was working there. What's the facts that put her on notice before she consulted a lawyer that she had a claim? Well, and, Your Honor, to answer that question, I think you'd need to look to the jury instructions. KC 2702 actually lay out the elements for an overtime claim. Well, I'm asking you that. But, Counsel, those elements for an overtime claim are ñ that question, whether overtime is or is not due, is something judges go round ñ and juries go round and round and round about. It is not self-evident. I'm certainly willing to go with you that when she files suit in September of 2011, she's on notice. You bet. And that's absolutely right, Your Honor. But earlier than that, I think you have a really tough slog. So what happens after 2011? She files suit. She's on notice. Right? Yes, she is on notice. Okay. So then she allows the bankruptcy to be dismissed. And opposing counsel has said she's entitled to do that. And the reason I'm concerned about this is that we have this competing concern, and Ocwin talks about it, all of our case law talks about this, our recognition of it's not something Michaels is concerned about because you want to, of course, defeat this litigation against your client. But what about the creditors? If the civil claim is allowed to go forward and it turns out to be meritorious, then there's an asset available to pay her creditors. If we dismiss it, there won't be. Well, I don't know that that's actually true, Your Honor. Why not? Because in this case, the creditors were actually put on notice of the claim, as Mr. Gallo pointed out. He asked for judicial notice of his motion to reopen the bankruptcy proceedings, which was denied. They were put on notice of the specific fact that her claim was dismissed. Just because she herself doesn't have standing to pursue the claim doesn't mean that the trustee in and of itself can't pursue the claim. And that's a material difference. Well, I appreciate it's a difference, but it's not cut and dry. The other part of this is that once she was on notice, because, after all, you didn't plead the affirmative defense, I think that's uncontested. And then Michaels, you know, opposed her attempt to reopen in the bankruptcy  So do you want to speak about that? Sure, Your Honor. When it comes to the motion to reopen, that was not anything that was in front of the district court. The district court can't be accused of abusing its discretion as to matters that weren't before it at that point in time. The fact is that she was deposed in 2012. She was deposed in July of 2012. That was less than a year from the date. Yeah, I think it was like nine months or something like that. That's right. It was less than a year. Had she intended to reopen, had she wanted to reopen within that one-year period of time, she certainly could have done so. She didn't do something. I mean, you're in a pretty tough position, though, talking about other people not doing what they're supposed to do when they're supposed to do it. Why didn't the defendant assert this is an affirmative defense after the deposition? You waited until the summary judgment motion, which was quite a long time later. Well, Your Honor, we weren't actually, that was never raised at the district court, the question of whether or not she had sufficient notice. Now, failure to plead an affirmative defense. Well, failure to plead the affirmative defense was raised, wasn't it? Absolutely. That's why the judge mentioned sandbagging. No, no, no. In fact, that was a separate, that was a separate order. Your Honor, the judge in a motion for fees as to the other remaining plaintiffs mentioned the fact that he had dismissed Ms. Sedlowski's bankrupt claims on the basis of judicial estoppel. And in a separate order in which counsel was awarded fees for the entirety of his conduct on behalf of not only the plaintiffs, the named plaintiffs in the case had her claims dismissed. And he said in that context, he said, well, look, no, they had knowledge, you had knowledge back in July of 2012 that she was deposed on this issue, that it may be raised. And therefore, by virtue of the fact that you waited two years then to seek dismissal of it, I'm not going to cut off 25% of the attorney's fees. Why does that context help me with the, with the trial? Because the question of whether or not this was raised as an affirmative defense or not was never before the district court. Counsel never, never raised that argument. It was waived to the extent that they had raised it. One of the defenses to that argument in front of the court is that it's harmless error because they did have sufficient notice. And we would have developed a record along those lines. I appreciate that you're talking fast and I would be too if I had to make this argument. But you haven't asked Judge Kennelly's question about the point is you're trying to indicate that you're trying to have it both ways and your client didn't really do what it was supposed to do either under the rules. Well, and what I'm trying to get to, the reason I was trying to talk fast, Your Honor, was because I was trying to get to an important point of law, which is that judicial estoppel is a judicial doctrine. It is a doctrine that can be applied by the court sui sponte without either party raising it as an affirmative defense or otherwise. Okay. Fair enough. But I guess let me tell you why I'm asking about this. So the district court talks about this good-faith standard and how the good-faith standard differs. It's tougher on the plaintiff if the plaintiff hasn't gone back to try to amend the schedules. That's right. And so because she hadn't gone back to try to amend the schedules, she had a tougher standard applied to her by the district court. If you guys had raised the affirmative defense and pled it and filed an after you had all the facts that you relied on in the summary judgment motion, she could have gone back to the bankruptcy court then. That would have been within the one year to do that. She could have tried to do this then. She wouldn't have been, you know, shut out from doing that. And she would have had a more relaxed good-faith standard applied to her by the district court. So that's – tell me why that isn't a significant difference. Sure, Your Honor. In the Chapter 13 proceedings, it's her burden to be open and honest with the bankruptcy court. It's her burden to reopen proceedings to apprise the court to the extent, whether we raise that issue or not, that would have been true. See, but if I'm a litigant, I mean, and this stuff has come up at the deposition and somebody's asked, well, did you ever raise this in the bankruptcy court? The deposition's over, the civil case goes on, and you don't come in and raise the affirmative defense. Why doesn't that tell your average litigant and your average lawyer, you've decided it's not a real issue and so I don't have to go back and do anything because my bankruptcy case is over. It doesn't matter anymore. Fair enough, Your Honor. But that's precisely because the issue of judicial estoppel and the principles surrounding a failure to disclose in a bankruptcy proceeding can be raised sua sponte by a district court judge. You can't simply assume by virtue of the fact that you failed to disclose, haven't corrected those disclosures, hasn't been raised as an affirmative defense, that it won't otherwise estop your claims because it is an issue that the district court can raise. You'd have a much stronger argument if Michaels hadn't opposed her attempt to reopen and disclose. I'm sorry, Your Honor? You would have a much stronger argument if you hadn't tried, if Michaels hadn't opposed her attempt to reopen, right? Well, I actually think the attempt to reopen is irrelevant in this case, again, because the question is whether or not the district court abused its discretion. In this case, the motion to reopen did not happen until after the opening brief in this appeal had actually been filed. It happened years after it should have happened, and certainly much longer after the district court entered its air, entered its order. The district court could not have erred by failing to consider something that was not even before it. She had an opportunity to move to reopen. So what's the unfair advantage that she got after the point in time she realized that she had a wage and hour claim? Well, again, Your Honor, I would like to take, just take it as a given at this point. I mean, let's call it a hypothetical question. If hypothetically she didn't know that she had a claim until she consulted a lawyer in September, whatever year it was, did she get any unfair advantage after that point from not disclosing this claim to the bankruptcy court? And if so, what was it? Now, I think she did get an unfair advantage. I think Hamilton tells us that you don't actually have to have an unfair advantage because Hamilton is a case. But, counsel, could you just answer the question? What was the unfair advantage? Okay. The unfair advantage is that any bankruptcy proceedings, as Hamilton points out, the creditors and the court rely on the schedules to determine what actions they are going to take in the matter. Now, at that point in time, you have a bankruptcy stay in place. You have an order confirming a plan in place. That order was modified. There was a plan in place. She was making payments then to creditors such as the Franchise Tax Board and the IRS. Now, the unfair advantage is inherent in the fact that there is a stay in place and that there is a plan in place and that the parties are operating under that plan. What's the importance of that? The importance of that. But she allowed it to be dismissed, so she lost her stay. Well, she allowed it to be dismissed after, after she became aware of the lawsuit and without disclosing those claims to the creditors. So, for example, even in – So is it that had she come – is your position – that had she come forward and said, hey, I've got this suit that I just filed in September of 2011, that the trustee may have withdrawn its motion to dismiss to see – to take the position instead, hey, let's play this out and see if it ever results in some money? That's absolutely right. That's one option that could have been pursued. But, again, the creditors in the court, as the court in Hamilton said, the creditors in the court rely upon the information. We don't know what actions they would have taken, but their actions are based on the information that they're given. So I know we don't know what actions they would have taken, but the one I just spun out is the only one I can think of that could possibly be deemed a benefit to her. Otherwise, I don't see it. And so if I'm missing one, please – Sure, sure. And I think one other action that they could have taken, for example, is that they could have moved to lift the stay. So, for example – Well, she didn't have any money yet. She just had a claim. Well, she had a – that's right. She had a claim. But they could have moved to lift the stay under those circumstances. They could have negotiated a higher payment amount. Well, she didn't have any money. She just had a claim. Again, the problem was they were moving to dismiss because she wasn't making payments. So it gets to be the blood from the turnip problem. I can't see that it would be the case that just because she filed a claim, they would say, ah-hah, now she's able to pay it. Well, you know, they could have – she did have a job at the time, so they could have actually sought a lien on the assets against the potential claim. So, for example, in a bankruptcy proceeding, to the extent the assets haven't accrued, they're still contingent at the time, the stay can be lifted such that you can garnish wages against the potential recovery of a future claim. And that's particularly true in combination with a scenario in which they actually said, well, let's let that claim go forward. Again – Can I ask a question about something Mr. Gallo said before he went out of time? He said that under bankruptcy law, I think he cited 1307B or something like that, that a debtor can essentially voluntarily dismiss the bankruptcy at any point in time, doesn't require court approval. Is that right? Do you agree with that or disagree with that? Well, I don't think that's right, Your Honor. I think they can dismiss a claim at any time, but I think it requires an order of the court to eliminate the plan and to remove the stay that's in place. And so, again, here – So you can't just – it's not like a Rule 41A dismissal in a district court case where you can just file a piece of paper and it says, I hereby dismiss. No, Your Honor. And, in fact, so if you look at the timeline, she retains counsel in September of 2011, and it wasn't until October of 2011 that the bankruptcy court granted the motion to dismiss. That's on ER 547. Right. And in that period of time, remember, it's important, she continued to have the benefit of the stay. She continued to have the benefit – Do you know what the reason for the delay was between the oral dismissal and the written order? It takes like a year or something like that, right? Between October of 2011 and November of 2012? Yeah. I don't know the reason for that. I understand that the bankruptcy court orally granted the motion in October 2011, right? That's clear, right? It was October 25, 2011, Your Honor. Right. And so we don't have – we don't know why it took a year to get the order – 13 months to get the order entered. We don't, Your Honor. We don't. Okay. In the few minutes I have remaining, I'd like to address the question briefly of the knowledge of the claim. Your Honor, if we look at Hay and Hamilton, they focus on whether or not there was knowledge of facts giving rise to a potential cause of action. I pointed to KC-2702. There are four elements to an overtime cause of action. Those four elements are you performed work, overtime was worked, no overtime was paid, and the amount of damages. Not that easy. I mean, this is a misclassification case, right? That's an affirmative – This is a misclassification case, right? Sure. Okay. And the question of whether somebody is classified as – properly classified as exempt or not exempt isn't like something you can look at a piece of paper and say, here it is. It's complicated. I mean, as a district judge, that's about 10 percent of my docket. Those are complicated cases. Well, the undisputed fact on the exemption, which is an affirmative defense, does not go to the prima facie case. The prima facie case of overtime are the four elements. But the affirmative defense of an exemption is one that requires – My point is that you go to work for somebody. They call you a manager. They tell you, here's your salary. You don't get overtime. It's not a simple proposition for somebody to be on notice of the facts that would give rise to a wage and hour claim under the FLSA or the California equivalent to that. It just doesn't make sense to me. Except in this case that she alleged, and it was undisputed fact in this case before the district court, that she had worked physical manual labor throughout the time of her employment. That in and of itself defeats the exemption. And that's knowledge of a fact. That's when she had – that's after she talked to the lawyer. No, no, no. That's after she talked to the lawyer. Well, whether or not she was working physical manual – But, I mean, the notion of knowing that that's a significant thing. In other words, she's a store manager. Yeah, and she's stocking shelves or whatever it is she's doing. But the awareness of whether that particular fact is a significant thing or not is not something that would be obvious to your average Jane. Well, and, Your Honor, if I could just answer that question. I see I'm out of time. Go ahead. The point I was trying to make is that the question in Hamilton and Hay and then in Rio Coastal Plains is not knowledge of a legal claim. It's knowledge of facts that could potentially give rise to a legal claim. And the fact that you are working physical manual labor for the majority of your time is in and of itself a fact that gives rise to a legal claim. It's no different, for example, than the fact that if I know I've won the lottery, I don't need to know the statutes or the case law or the specific rights that I can enforce legally to obtain that. I know facts that could potentially give rise to a legal claim. That's what Hay focused on, Hamilton focused on, and Rio Coastal Plains focused on. And that was our point. So I appreciate the time. Thank you very much, Counsel. Gallo, I think you have about a minute and a half remaining. Thank you, Your Honor. There's one point of law on which there's disagreement, and that's whether one can dismiss summarily. My understanding of 1307B is that one can. I have a vague recollection. I thought you said in answer to an earlier question from Judge Conelli that it was like Federal Rule of Civil Procedure 41A. That's exactly what I just said. Well, 41A, if an answer has been filed, you can't just dismiss. Well, that was going to be my next question. I mean, hadn't this proceeding gone on long enough that it would require an order of the court to grant the dismissal? My understanding of 1307B is you file it, that's it, there's no judicial discretion involved. But 41B, under the Federal Rules of Civil Procedure, requires at least an allocation of costs or an agreement among the parties. I'm not aware of any analog in bankruptcy. There's nothing in bankruptcy beyond 1307B. It should be very, very simple. It's an established point of law. I don't have the code in front of me. Well, I mean, we can check the statute. If I'm wrong, I'll be surprised. It's just dismissible at the debtor's option. The question, so then the question is, well, did she somehow benefit between September and October from the automatic stay? My understanding, so she had an unproven disputed claim against Michaels. My understanding of the law is you can't levy on a lawsuit. No, but you could choose to just let the case go forward rather than, so why couldn't the trustee have decided to withdraw his motion to, his or her motion to dismiss? Because of 1307B, the debtor could have just dismissed. You know, I have questions that I don't have the answer to. Your Honor apparently thinks that it's not reasonable for her to say she didn't even know about bankruptcy or anything. Well, don't assume you didn't know what I think. I always ask the hardest questions for both sides. Don't infer. Don't infer. My question would be, well, why did the bankruptcy lawyer just not file a 1307B dismissal? I don't know. The only communication I ever had with that lawyer was when I later retained her to file the motion to reopen after I had to go find her after the summary judgment proceedings, which would have been done two years earlier if they'd completed the affirmative defense. Counsel, you are out of time. Thank you very much. Thank you, Your Honor. The case just argued is submitted. We'll take a 10-minute recess before we hear the final argument on the calendar. All rise.
judges: Tallman, Christen, Kennelly